UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BARNEY BLAIR PERRY, JR.,

                Plaintiff,

      -vs-                  **No. 1:15-cv-00265-MAT**
                                    **DECISION AND ORDER**

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

---

## I. Introduction

Represented by counsel, Barney Blair Perry, Jr. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security[1] ("Defendant" or "the Commissioner") denying his application for disability insurance benefits ("DIB"). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## II. Procedural History

On June 8, 2012, Plaintiff, a then-twenty-nine year old former delivery truck driver and loader/unloader, filed for DIB, alleging

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017. The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

disability beginning October 21, 2011 due to mental illness, depression, paranoia, explosive anger, bipolar disorder and suicidal ideations[2] (T. 15, 64, 168-73, 186). Plaintiff's application was denied on September 12, 2012 (T. 99-106), and he timely requested a hearing before an administrative law judge ("ALJ"). ALJ Robert T. Harvey held a hearing on October 8, 2013 (T. 40-72). On November 7, 2013, the ALJ issued a decision in which he found Plaintiff was not disabled as defined in the Act (T. 12-30). On January 30, 2015, the Appeals Council denied review leaving the ALJ's decision as the final agency decision (T. 1-5). This action followed. The Court assumes the parties' familiarity with the facts of this case, which appear in the record, and will not repeat them here.

### III. The ALJ's Decision

Initially, the ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2016 (T. 17). At step one of the five-step sequential evaluation, *see* 20 C.F.R. § 404.1520, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 21, 2011 (*Id.*). At step two, the ALJ found that Plaintiff had the severe impairment of discogenic lumbar spine; lumbar radiculopathy; bipolar disorder;

---

[2] In a previous application for DIB, an ALJ found that Plaintiff had not been disabled from his alleged disability onset date of September 29, 2009, through October 20, 2011, the date of the ALJ's decision (T. 85-90). Plaintiff did not appeal, so Plaintiff's alleged disability onset date is the day after the previous ALJ's decision.

2

depression; anxiety; and drug and alcohol abuse, not material (20 C.F.R. § 404.1520(c)) (*Id.*). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment (T. 17-19). Before proceeding to step four, the ALJ found that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he cannot work in an area with unprotected heights or around heavy, moving, or dangerous machinery. Plaintiff was also limited to occasional bending, climbing, stooping, squatting, kneeling, balancing or crawling; and cannot climb ropes, ladders or scaffolds (T. 19). Additionally, the ALJ found that Plaintiff had occasional limitations in the ability to (1) understand, remember and carry out detailed instructions; (2) interact with the general public; (3) perform the basic mental demands of unskilled work, including the ability to understand, remember and carry out simple instructions; (4) respond appropriately to supervision, co-workers, and usual work situations; and (5) deal with changes in a routine work setting (*Id.*). At step four, the ALJ found that Plaintiff could not perform any past relevant work (T. 24). At step five, the ALJ found considering Plaintiff's age, education, work experience, and RFC, that Plaintiff could perform other work in the national economy that exists in significant numbers in such representative occupations as small parts assembler, mail clerk and routing clerk (T. 25). Accordingly, the ALJ found that Plaintiff was not

3

disabled from October 21, 2011 through the date of his decision (T. 26).

**IV. Scope of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**V. Discussion**

Plaintiff makes the following arguments in support of his motion for judgment on the pleadings: (1) the ALJ failed to properly evaluate the "other source" opinion of Plaintiff's treating mental health counselor; (2) the ALJ failed to properly develop the record with respect to Plaintiff's mental health; and (3) the ALJ failed to find Plaintiff's schizophrenia with paranoid features to be a severe impairment. Plaintiff does not challenge any of the ALJ's findings with respect to Plaintiff's physical limitations.

### A. Plaintiff's RFC

#### 1. Other Opinion Evidence

Plaintiff argues that the Court should remand his case to the ALJ because the ALJ committed legal error by ignoring and not weighing the opinion of Plaintiff's Licensed Mental Health Counselor ("LMHC") Vondolyn Lane of Monsignor Carr Institute in connection with the RFC assessment. Plaintiff further argues that this violated SSR 06-03p, 2006 WL 2329939 (S.S.A. 2006) (*Id.*). The Commissioner contends that LMHC Lane was not Plaintiff's treating counselor and, even if she was, the balance of the medical record contradicts her opinion. Moreover, the Commissioner argues that the ALJ's RFC assessment was otherwise supported by substantial evidence.

SSR 06-03p explains that opinions from "other sources" such as a counselor are "important" and "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, 2006 WL 2329939, at *3.[3] SSR 06-03p further directs ALJs to apply the same factors used to evaluate acceptable medical sources in evaluating the opinions of non-medical sources such as counselors. *See Vishner v. Colvin*, No. 1:14-CV-00431 (MAT), 2017 WL 1433337, at *5 (W.D.N.Y.

---

[3] SSR 06-03p was rescinded by Federal Register Notice Vol. 82, No. 57, page 15263, effective March 27, 2017. The parties do not dispute that it applied during Plaintiff's 2013 hearing or ALJ Harvey's decision of the same year.

Apr. 24, 2017) (citing *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011)).

However, even if an ALJ must consider relevant, other evidence, *see* 20 C.F.R. § 404.1545(a)(3), the ALJ is not obligated to summarize every single piece of evidence in the administrative transcript. *See, e.g.*, *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78-79 (N.D.N.Y. 2005) ("The ALJ was not required to mention or discuss every single piece of evidence in the record." (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). Rather, where "the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur*, 722 F.2d at 1040.

Here, the ALJ did not err by not specifically summarizing a single 30-minute, walk-in appointment as part of the extensive 600-page medical record in this case. At the June 4, 2012 appointment, both LMHC Lane and Non-Physician Provider ("NPP") Diane Page saw Plaintiff for an individual counseling session (*Id.*). They noted that Plaintiff appeared cooperative; was oriented; spoke at a normal rate, rhythm, and volume; was well-groomed; was in a euthymic mood; had a congruent affect; had an organized and goal-directed thought process; had no perceptual distortions; had fair insight and judgment; and had good impulse control (*Id.*). They

also noted that Plaintiff was delusional and his psychosis and paranoia were "increasing" (*Id.*). However, neither LMHC Lane nor NPP Page offered any explanation or rationale to support their observations. It is noteworthy that despite the size of the record, this is the only session that Plaintiff cites as evidence of LMHC Lane's direct examination of Plaintiff (T. 358). This brief session does not evidence a treating relationship. *See Patterson v. Astrue*, 11-CV-1143, 2013 WL 638617, at *8 (N.D.N.Y. Jan. 24, 2013) ("three examinations by [a physician] over the course of four months . . . does not constitute the type of 'ongoing relationship' that is required for finding that s/he is plaintiff's treating physician under the relevant regulations" (citing 20 C.F.R. § 404.1502)), *report and recommendation adopted*, 2013 WL 592123 (N.D.N.Y. Feb. 14, 2013). Moreover, in May 2010, NPP Page listed Connie James, *not* LMHC Lane, as Plaintiff's therapist while completing an Initial Psychiatric Evaluation for Plaintiff (T. 374). Indeed, a vast majority of the Monsignor Carr Institute treatment notes indicate that other counselors conducted the nearly thirty evaluations of Plaintiff from April 17, 2010, through May 6, 2013 (T. 358-78, 383-88, 603, 609, 614, 640-43).

Additionally, other evidence in the medical record shows, consistent with Plaintiff's own admission, that LMHC Lane's role was really more of a supervisory one. On October 20, 2010, one year before Plaintiff's onset date, LMHC Lane, along with an unidentified psychiatrist with an illegible signature, completed a

"Treatment Plan" form for Plaintiff's problems of anxiety and depression (T. 382). Unlike Monsignor Carr Institute's Progress Notes, which include a date of visit, the Treatment Plan form does not indicate any date that LMHC Lane examined or treated Plaintiff as a part of formulating the Treatment Plan. The form also included a diagnosis of "generalized anxiety" and depression, but, again, it was not clear that the diagnosis was based on an examination. On January 20, 2011, nine months before Plaintiff's onset date, LMHC Lane completed a similar Treatment Plan form for Plaintiff, but this time the form listed Plaintiff as having a diagnosis of schizophrenia and paranoia (T. 381). Nevertheless, it was not clear that the diagnosis was based on LMHC Lane's examination or the examination of other Monsignor Carr Institute personnel.

LMHC Lane also wrote three letters on behalf of Monsignor Carr Institute and its personnel, but none of them clarify her individual relationship to Plaintiff but instead appear to be written to address Plaintiff's relationship with Monsignor Carr Institute as a whole. For example, in one letter to an unidentified recipient dated October 7, 2011, just prior to Plaintiff's onset date, LMHC Lane explained that "*we* have diagnosed [Plaintiff]" with schizophrenia and paranoia, and Plaintiff "sees Monsignor Carr Nurse Practitioner Diana Page for medication" (T. 843-45 (emphasis added)). LMHC Lane repeated this statement, word for word, in letters dated November 17, 2011 and February 22,

8

2013, also to unidentified recipients (*Id.*). On February 22, 2013 she also stated that "in *MCI*['s] opinion Mr. Perry is unable to work or attend any training programs at this time" (T. 845 (emphasis added)). As Plaintiff recognizes in the Reply, such an opinion receives no special significance because it is a conclusion on the ultimate issue vested to the Commissioner. *See* 20 C.F.R. § 404.1527 (statement that claimant is "unable to work" is an opinion "on [an] issue[] reserved to the Commissioner"); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527).

Finally, LMHC Lane's opinion is not consistent with other evidence, including other treatment notes from Monsignor Carr Institute. Other treatment notes completed by NPP Page showed that Plaintiff's mental status was normal stating that Plaintiff had cooperative behavior; was oriented; spoke at a normal rate, rhythm and volume; had an intact memory; had good concentration; was in a euthymic mood; had a congruent effect; was organized and had a goal-directed thought process; had no perceptual distortions; had fair insight and judgment; and had good impulse control (T. 359-73). Moreover, while LMHC Lane repeatedly stated that Plaintiff was compliant with his medication (T. 843, 844, 855), NPP Page cited numerous instances where Plaintiff was not compliant with taking his medication as directed (T. 360, 361, 367, 371, 603). One such comment by NPP Page, on August 22, 2011 (T. 361) was only two months before LMHC Lane's October 2011 statement that

9

Plaintiff was compliant with his medications (T. 844). Therefore, the ALJ did not err by not specifically summarizing LMHC Lane's treatment of Plaintiff while formulating the RFC. *See Mongeur*, 722 F.2d at 1040.

## 2. Failure to Develop the Record

Plaintiff also argues that the ALJ's RFC finding is not supported by substantial evidence because the ALJ failed to develop the record. Specifically, Plaintiff contends that the ALJ left a gap in the record by according only some or little weight to the opinions of consulting physician Susan Santarpia, Ph.D. (T. 22), State Agency review psychologist Dr. Juan Echevarria (*Id.*) and State Agency review psychologist Dr. Brady Dalton (T. 23).

On August 14, 2012, Dr. Santarpia conducted a psychiatric examination per the request of the Social Security Administration (T. 488-91). Plaintiff reported he was currently taking medications for his mental illness, stating that they stabilized his suicidal thoughts (T. 488). He further reported no anxiety-related symptoms or manic episodes (T. 488-89). Plaintiff was talkative throughout the examination, but with pressured speech and some distractibility and flight of ideas (T. 489). Plaintiff had appropriate eye contact and coherent thought process during the examination (*Id.*). Dr. Santarpia noted that Plaintiff's attention and concentration were mildly impaired, but she suspected malingering (*Id.*). Dr. Santarpia opined the following mental abilities: able to follow and understand simple directions and instructions; perform simple

tasks independently; maintain attention and concentration; maintain a regular schedule; learn new tasks; make appropriate decisions; and appropriately deal with stress within normal limits (T. 490). Additionally, Plaintiff had a mild impairment in performing complex tasks independently and relating adequately with others (*Id.*). Plaintiff also had difficulties caused by distractibility (*Id.*). Dr. Santarpia noted that Plaintiff's psychiatric impairments did not appear to be significant enough to interfere with his ability to function on a daily basis (T. 491). Dr. Santarpia diagnosed Plaintiff with bipolar disorder; alcohol dependence/abuse, sustained; and cannabis dependence/abuse, sustained (*Id.*).

On September 10, 2012, State Agency psychologist Dr. Echevarria reviewed Plaintiff's medical records and concluded that Plaintiff had an affective (bipolar) disorder and a substance abuse disorder, but that these impairments were non-severe (T. 503, 506, 515).

On November 27, 2012, State Agency psychologist Dr. Dalton reviewed Plaintiff's records and agreed with Dr. Echevarria's assessment that Plaintiff's psychiatric impairments were non-severe (T. 518). Dr. Dalton also addressed Plaintiff's credibility, noting possible malingering during a mental status evaluation and noting Plaintiff's recent use of illicit substances directly contradicted his denial of such use since 2008 (T. 518).

11

Plaintiff's contention that the ALJ rejected the opinions of doctors Santarpia, Echeverria and Dalton is not supported by the decision. Indeed, the ALJ reviewed and weighed each of the opinions in turn. He gave "some weight" to Dr. Santarpia's findings, but not to the prognosis "as guarded" because it was inconsistent with Dr. Santarpia's examination findings (T. 22). The ALJ accorded little weight to Dr. Echevarria's findings because they were not supported by the treatment notes of Monsignor Carr Institute or Dr. Santarpia's findings (T. 22). Specifically, the ALJ noted that contrary to Dr. Echevarria's findings, Plaintiff had a difficult time socially, with both family and friends, and, as he explained to Dr. Santarpia, he was taking medication that stabilized his suicidal thoughts (T. 22). Thus, although the ALJ assigned no weight to Dr. Echevarria's opinion, this was because he credited Dr. Santarpia's opinion as to Plaintiff's ability to be around others and his use of medication. The ALJ next gave "some, but not great weight" to Dr. Dalton's decision, explaining that Dr. Dalton found Plaintiff's condition non-severe and somewhat stable, but found Plaintiff not credible because of his illicit drug use (T. 23).

Notably, Plaintiff offers no other gaps in the medical record. In fact, Plaintiff's medical record is quite extensive containing sufficient medical evidence of routine treatment, including evaluations and opinions from several physicians, mental health counselors, and state agency medical experts. Where, as here,

"there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999); *see also Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996) (ALJ need not obtain information from treating physician where ALJ already had a complete medical history and evidence received from treating physicians was adequate to determine disability).

Moreover, the ALJ's RFC assessment is consistent with the opinions of doctors Santarpia and Dalton concerning Plaintiff's mental abilities which negates any impression that their opinions were rejected. *See, e.g.*, *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (concluding that although ALJ formally rejected consulting examiner's opinion because he only saw plaintiff once and findings were "inconsistent with nearly contemporaneous medical records," ALJ's RFC was nevertheless consistent in "all relevant ways" with consulting examiner's opinion); *see also, e.g.*, *Crawford v. Astrue*, No. 13-CV-6068P, 2014 WL 4829544, at \*20 (W.D.N.Y. Sept. 29, 2014) (citing *Pellam*). For example, Dr. Santarpia found that Plaintiff was able to follow and understand simple directions and instructions; perform simple tasks independently; maintain a regular schedule; and appropriately deal with stress within normal limits (T. 490). He also found that Plaintiff had a mild impairment in performing complex tasks independently, relating adequately with

others and was distractable (*Id.*). The fact that the ALJ's RFC assessment did not perfectly match their opinions is not grounds for remand because the ALJ's role is to weight all the evidence and ensure that the entire medical record supported his RFC finding. *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971))).

Furthermore, Plaintiff's argument that the ALJ should have requested a medical opinion from a treating source depends on the assumption that a treating source from Monsignor Carr Institute would have found more restrictive limitations than those found by doctors Santarpia, Echevarria and Dalton. To the contrary, the opinions of doctors Santarpia, Echevarria and Dalton were also consistent with the findings of personnel that treated Plaintiff at Monsignor Carr Institute, which the ALJ referenced in support of his decision. Specifically, NPP Page completed an Initial Psychiatric Evaluation for Plaintiff in May 2010 which found, among other things, that Plaintiff had difficulty socializing, was untrusting of others, had a difficult time in high school and currently had limited contact with his family who mistreated him as a child (T. 21, 376). Given the similarities between the Initial Psychiatric Evaluation and the opinions of doctors Santarpia,

14

Echevarria and Dalton, it is "doubtful that a medical source statement from [a treating source at Monsignor Carr Institute] would have altered the ALJ's assessment of Plaintiff's RFC." *Hogan v. Colvin*, No. 12-CV-1093, 2015 WL 667906, at *6 (W.D.N.Y. Feb. 17, 2015). Accordingly, based on the medical record, remand is not required based on the ALJ's failure to fully credit doctors Santarpia, Echevarria and Dalton or because of his alleged failure to request a medical source statement from one of Plaintiff's treating physicians. *Id.* Instead, the record as a whole was "adequate to permit an informed finding by the ALJ." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x. 29, 34 (2d Cir. 2013).

**B. Failure to Find Schizophrenia to be a Severe Impairment at Step Two**

Plaintiff also argues that the ALJ failed to include schizophrenia (with paranoid features) as a severe impairment despite "strong evidence" that Plaintiff suffered from the mental condition.

A medically determinable impairment is an "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. An impairment is not severe if it does not significantly limit your physical or mental ability to do basic work activities. *See, e.g.*, 20 C.F.R. § 404.1522(a); SSR 85-28, 1985 WL 56856, at *3-4 (S.S.A. 1985). "The phrase 'significantly limits' is not synonymous with 'disability.'

15

Rather, it serves to 'screen out *de minimis* claims.'" *Showers v. Colvin*, No. 3:13-CV-1147(GLS), 2015 WL 1383819, at *4 (N.D.N.Y. Mar. 25, 2015) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). Basic work activities include, for example, the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting. § 404.1522(b). Consequently, "[a] finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' . . . [with] . . . 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154, n.12 (1987)).

Here, the ALJ did not err by finding that Plaintiff's alleged schizophrenia was not a medically determinable impairment (T. 17). Indeed, there are only sporadic references to schizophrenia in the record and no diagnosis of schizophrenia included any related nonexertional limitations. For example, the majority of Monsignor Carr Institute treatment notes diagnosed anxiety (T. 382, 396, 643), depression (T. 379, 382, 393, 641), gave no diagnosis (T. 359, 365, 368, 370, 371) or otherwise ambiguously characterized Plaintiff's diagnosis as "no change" (T. 363, 366, 367, 369, 372, 373). Notably, the ALJ diagnosed both anxiety and depression as severe impairments (T. 17). It is true that on May 3, 2010, NPP Page did diagnose Plaintiff with bipolar disorder versus

16

schizoaffective disorder (T. 377).  Yet, LMHC Lane's most recent "treatment plan" for Plaintiff, on October 21, 2012, included a diagnosis of anxiety and depression — *not* schizophrenia (T. 382).

Other records also support the ALJ's finding.  On July 31, 2012, Plaintiff admitted himself for in-patient treatment at Buffalo General Hospital, for suicide ideation and hallucinations (T. 591-96).  The treating physician diagnosed him with bipolar disorder and personality disorder — not schizophrenia (T. 596).  At discharge on August 6, Plaintiff's diagnosis was limited to bipolar disorder (T. 837).

Moreover, Dr. Santarpia considered Plaintiff's diagnosis history of depression, anxiety, schizophrenia and bipolar disorder (T. 488), but limited her diagnosis to bipolar disorder after performing a mental examination (T. 491).  Additionally, Plaintiff never raised schizophrenia as an issue at the hearing.  Instead, Plaintiff stated that he suffered from bipolar disorder, anxiety and depression and his attorney only questioned him about his substance abuse, mood disorder, depression and anxiety (T. 45, 58-62).

Plaintiff cites several other isolated facts in the record in support of his contention that the ALJ erred by not finding schizophrenia a severe impairment.  Plaintiff contends that treating psychiatrist Dr. Jeffrey Kashin diagnosed Plaintiff upon admission on April 21, 2010 with schizophrenia, paranoid, chronic

and then reiterated that diagnosis on September 16, 2010. According to Plaintiff, if the ALJ had considered Dr. Kashin's diagnosis he might have concluded that he was disabled. Plaintiff misstates the record. Plaintiff cites Monsignor Carr Institute records in support of his arguments regarding Dr. Kashin's diagnosis (T. 383. 388). However, Dr. Kashin was employed by Kaleida Health *not* Monsignor Carr Institute, and nothing in the cited Monsignor Carr Institute notes suggest that Dr. Kashin signed any Monsignor Carr Institute documents. Each of the referenced Monsignor Carr Institute reports include a signature, but it is illegible and the signator is not otherwise identified on the document.

Plaintiff further argues that the ALJ erred by only limiting Plaintiff in social interaction with the general public, arguing that the ALJ should have also limited Plaintiff from dealing with co-workers and supervisors. However, the Monsignor Carr Institute treatment notes consistently recorded that Plaintiff was cooperative, with a euthymic mood and congruent effect — indicating the ability to respond appropriately in a normal work setting (T. 359-73). The ALJ also noted that Plaintiff's own statements acknowledged that he engaged in socializing with friends and family, and was twice hospitalized for injuries from playing football — an activity requiring interaction, cooperation and team work (T. 347, 407, 465). These incidents suggest that Plaintiff was not as limited socially as he alleged.

Plaintiff also claims that his schizophrenia was severe based on his April 21, 2010 statement that "voices tell him to take all of his pills at once" (T. 386). However, Plaintiff worked with his alleged schizophrenia at the substantial gainful activity level until July 2011, when he either was fired or quit work due to a back injury (T. 182, 206, 362). The fact that he worked with this impairment contradicts Plaintiff's claim. In fact, as the record reveals, most of his mental evaluations after he stopped working indicate that Plaintiff suffered from depression and anxiety, and not schizophrenia. Thus, Plaintiff does not demonstrate that his schizophrenia prevented him from working.

Finally, Plaintiff argues that a different ALJ, based on a previous application for benefits, found that Plaintiff had severe schizophrenia. However, that ALJ decided that case on October 20, 2011 – the day before Plaintiff's alleged onset date - and found Plaintiff was *not* disabled even without the benefit which the ALJ had here of three prior examining opinions as to Plaintiff's mental health and limitations (T. 86, 90-91).

Ultimately, even if the ALJ erred at Step 2 by failing to find Plaintiff had schizophrenia, the record contains no nonexertional limitations in connection with Plaintiff's alleged schizophrenia, and nothing in the record suggests that any such limitations would go beyond the nonexertional limitations set forth by the ALJ for Plaintiff's anxiety and depression, which are supported by the medical record. Thus, any alleged error in failing to find

schizophrenia was a severe impairment would be harmless. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (holding where application of correct legal principles to record could lead only to same conclusion, no need to require agency consideration). In sum, and for the reasons set forth above, Plaintiff has not shown that the ALJ erred by failing to find that he had the severe impairment of schizophrenia. The ALJ's decision finding Plaintiff not disabled is supported by substantial evidence in the record.

## VI. Conclusion

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 17) is denied. The Commissioner's motion for judgment on the pleadings (Docket No. 22) is granted. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                 **S/Michael A. Telesca**

                                HON. MICHAEL A. TELESCA
                              United States District Judge

Dated:   November 28, 2017
          Rochester, New York.